IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

DEMARCUS MCGHEE,              *

    Plaintiff,              *

vs.                          *      CASE NO. 4:18-CV-244 (CDL)

PPG INDUSTRIES, INC.,         *

    Defendant.             *

_____

O R D E R

Demarcus McGhee, who is black and suffers from sickle cell anemia, brings this action against his former employer, PPG Industries, Inc. ("PPG"), claiming that it discriminated against him because of his race and failed to accommodate his disability. Without evidence sufficient to create a genuine factual dispute, McGhee's litigation journey must come to an end and PPG's motion for summary judgment (ECF No. 15) must be granted. The remainder of this order explains why.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary

judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to McGhee, the record reveals the following facts.

McGhee is a black man who suffers from sickle cell anemia. On September 26, 2016, he began working for PPG, a company that manufactures and sells paints, stains, adhesives, and sealants. McGhee began as a sales associate at PPG's Columbus, Georgia store.[1] He claims that his supervisors assigned him unfavorable duties because of his race. He also contends that PPG failed to accommodate his sickle cell anemia and fired him when he sought accommodations.

---

[1] PPG contends that McGhee was actually an employee of its subsidiary, PPG Architectural Finishes, Inc., a non-party to this action. McGhee seeks to hold PPG liable under a veil piercing or "alter ego" theory. Because the Court grants summary judgment on other grounds, it does not need to decide this issue and assumes for purposes of this order that PPG was McGhee's employer.

## I.    Sales Associate Duties

### A.    Lifting Duties

McGhee's duties as a sales associate included "stock[ing] shelves, counters, or tables with merchandise," "tint[ing] paint and operat[ing] [the] color matching machine," and "obtain[ing] merchandise requested by customer[s]." McGhee Dep. Ex. I, PPG Job Description 1, ECF No. 15-26 at 258. To do this, sales associates frequently lifted and carried buckets of paint, which came in quart, gallon, and five-gallon sizes. McGhee Dep. 80:3-22, 81:13-82:8, ECF No. 15-26. The five-gallon buckets of paint weighed about fifty pounds each and were often moved with the help of dollies or transports. *Id*. at 81:17-23, 90:24-91:1. Even when using a dolly or transport, though, sales associates had to lift the heavy five-gallon buckets onto and off of the equipment. *Id*. at 90:6-16, 91:16-92:16, 93:2-9.

According to McGhee, sixty to seventy percent of the overall lifting he did as a sales associate involved lifting the five-gallon buckets of paint. *Id*. at 81:13-82:8.[2] He admitted that

---

[2] McGhee argues that he meant to say that sixty to seventy percent of the *heavier* lifting he did was the five-gallon buckets. But that is not consistent with his testimony. In deposition, PPG asked: "[h]ow much of the lifting that you did *overall* was actually lifting and carrying those five-gallon pails?" McGhee Dep. 82:4-6 (emphasis added). And McGhee answered: "[p]robably about 60, maybe 70 percent." *Id*. at 82:7-8. McGhee provided a clear answer to an unambiguous question about his *overall* lifting, not his *heavier* lifting, and he points to no evidence in the record contradicting or clarifying this testimony. Even if McGhee had offered a contradicting affidavit, the affidavit would still be insufficient because McGhee never explains the reason for his

"lifting and carrying these five-gallon [buckets] was an essential part of [his] job." *Id.* 93:10-13.

B. Warehouse Duties

Additionally, the Columbus PPG store had a warehouse attached to it, and supervisors assigned sales associates to work in the warehouse. According to PPG, the assignment was largely based on seniority at the Columbus store. Sales associates in their first ninety days on the job operated in a probationary period during which they worked in the warehouse to learn about PPG's products. After these sales associates trained new employees to work in the warehouse, they had more opportunities to work on the sales floor. *See* McGhee Dep. 191:16-23 (testifying that the person who trained McGhee to work in the warehouse began performing more functions in the front of the store afterwards); *see also id.* at 163:17-164:4 (testifying that after McGhee trained the sales associate hired after him to work in the warehouse, McGhee was allowed to go to the front of the store at selected times).

**II. McGhee's Complaint Regarding Warehouse Duties**

During his probationary period and approximately one month after his probationary period ended, McGhee complained to

---

contradiction. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (explaining that when a party offers an affidavit contradicting prior testimony, that affidavit does not create a dispute of fact if it merely contradicts without explanation the party's previous testimony). Thus, the Court finds it undisputed that sixty to seventy percent of McGhee's *overall* lifting involved lifting the five-gallon buckets.

supervisors that he was assigned to do a disproportionate amount of work in the warehouse because of his race.  *Id.* at 205:3-23, 206:7-14; Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 1, Letter from W. Adams to EEOC Investigator 2 (Apr. 23, 2018), ECF No. 21-2 ["EEOC Position Statement"].  PPG's Human Resources department met with McGhee and with PPG's Store Group Manager for the Alabama Market, Jason Buhl, to discuss his grievance.  EEOC Position Statement 2.

### III. McGhee's Tardiness

In January, a supervisor formally disciplined McGhee for being late to work.  Def.'s Mot. for Summ. J. Ex. K, Progressive Discipline Form (Jan. 9, 2017), ECF No. 15-13.  On the progressive discipline form, McGhee's supervisor wrote:

> Twice we have previously discussed you being tardy.  At our last meeting, I told you that any future incidents would result in a more formal write-up.  We also changed your schedule so that you are coming in later in the day instead of being here at open.  Last week you were late four out of the five days that you worked.

*Id.*  On two of those four incidents when McGhee was late, though, he was only one to two minutes late.  *Id.*

On April 13, 2017, a supervisor again formally disciplined McGhee for tardiness.  Def.'s Mot. for Summ. J. Ex. L, Progressive Discipline Form (Apr. 13, 2017), ECF No. 15-14.  The progressive discipline form stated that McGhee was tardy two days before "and

did not notify management until 25 minutes after [his] shift was scheduled to begin." *Id*.

McGhee was the only employee disciplined for tardiness at the Columbus store; he was also the only sales associate that had a frequent issue with tardiness. Lehman Dep. 48:3-13, ECF No. 15-25.

## IV. McGhee's Request for Accommodations

In May 2017, McGhee had surgery to repair a detached retina, possibly caused by his sickle cell anemia. After this incident, McGhee sought treatment for his sickle cell anemia with Georgia Comprehensive Sickle Cell Center to prevent an incident like this from occurring again. McGhee told staff at the center that he was fearful he might lose his job if PPG knew about his disability. So, around early July 2017, a social worker at the center provided McGhee a letter to give to PPG explaining that McGhee was being treated for "Sickle Cell Disease" and giving basic information about sickle cell. McGhee Dep. Ex. R, Letter from L. Irvin, ECF No. 15-26 at 265 ["July Letter"]. The letter explained that patients with sickle cell "frequently experience severe pain episodes (Crises)" which "may last for one day or several days at a time." *Id*. The letter also provided a "guide for employers in understanding the needs of their employee with [sickle cell disease]," noting that sickle cell patients may be absent from work during crises, may tire and need rest periods, must keep

hydrated, may need frequent bathroom breaks, and may need to avoid overheating or exposure to cold temperatures. *Id*. The letter also stated that "[h]eavy lifting, standing for extremely long periods of time and excessive stair climbing are discouraged." *Id*.

In late July, McGhee provided a copy of this letter to his supervisor, Brad Lehman, the manager of the Columbus store. Lehman passed the letter along to Buhl who told him that he would forward it to Human Resources. In the meantime, Lehman wrote on a copy of the letter, "[e]mployee is still expected to perform all duties of his job according to policy." *Id*.

On July 27, 2017, McGhee took a leave of absence from work. The next day, he informed PPG personnel that he could not work because he was suffering a sickle cell crisis. On August 1, 2017, Brianne Truchon in Human Resources called McGhee to discuss the July letter and informed him that the letter was too vague and needed to be more specific, giving detailed restrictions. McGhee Dep. 116:11-21, 119:14-17. That same day, Truchon sent McGhee an email explaining guidelines for the new restriction letter and that it "[m]ust state either Full Duty or Restricted Duty . . . If Restricted Duty must list specific restrictions . . . Lift/Bend/Twist/Push/Pull, etc. and weight limits/frequency/breaks." McGhee Dep. Ex. T, Email from B. Truchon to D. McGhee (Aug. 1, 2017), 15-26 at 267.

McGhee failed to provide Truchon this additional documentation for two weeks. Truchon Aff. ¶ 9, ECF No. 15-30.[3] On August 15, 2017, Truchon called McGhee to follow-up on the needed documentation and set a deadline for him to provide it. *Id.* ¶¶ 9-10. Three days later, McGhee emailed Truchon an updated letter. McGhee Dep. Ex. U, Letter from L. Asemota (Aug. 18, 2017), ECF No. 15-26 at 270 ["August Letter"]. The letter stated "[i]t is imperative that [McGhee] stay well hydrated at all times in order to minimize dehydration, lifting not more than 30 lbs and have 15-20 minutes rest interval while on duty to minimize episodes of painful crisis and complications." *Id.* The letter did not explicitly say whether these restrictions were permanent or temporary. But, McGhee testified that "it was explained to [him] . . . [that the restrictions were] permanent because it's a disease . . . . As long as [he had] this disease, these should be [his] work restrictions." McGhee Dep. 121:15-122:3.

Truchon then discussed the updated letter with PPG's Human Resources manager, its manager of Workers' Compensation &

---

[3] McGhee denies all facts related to Truchon's affidavit, claiming that he has not seen the affidavit and cannot provide a meaningful response. But he has not reduced these contentions to a sworn affidavit or declaration. Simply refuting them in a brief or denying them in response to PPG's statement of facts is not sufficient. *See* Local Rule 56; Fed. R. Civ. P. 56(d). The Court also rejects McGhee's contention that the affidavit is not available to him. The docket indicates that PPG filed Truchon's affidavit on the docket on November 13, 2019, almost a month before McGhee filed his response brief. Although it was filed with restricted access, McGhee had access.

Occupational Health Services, and Buhl to see if PPG could accommodate McGhee's restrictions. Truchon Aff. ¶¶ 12-13. PPG's main concern was the thirty-pound lifting restriction. Truchon called McGhee the following week, asking him to provide a list of duties that he could perform as a sales associate given his lifting restriction. McGhee stated that he could lift gallon and quart-sized buckets of paint, mix and match the colors for customers, ring them up, work the register, file work orders and purchase orders, help customers carry everything but five-gallon buckets of paint to their cars, clean bathrooms, pick up trash in the parking lot, break down boxes, stock the sundries such as rollers and brushes, answer customer phone calls, and empty the trash in the dumpsters. McGhee Dep. 125:18-126:13. Truchon and McGhee also discussed him transferring to a different PPG store.

Truchon subsequently went back to PPG's Human Resources manager and Buhl to discuss possible accommodations. Truchon Aff. ¶ 16. Buhl explained that because the Columbus store has a high volume of customers and transactions, sales associates in the Columbus store needed to be able to lift and carry five-gallon buckets of paint, which normally weighed over thirty pounds, many times throughout the day to assist customers and mix paint. *Id*. The group explored whether McGhee could work as a sales associate in a different PPG store, but there were no openings at other stores in the region and those stores were about forty minutes to

two hours away.  *Id*. ¶ 17; Buhl Dep. 70:5-71:8.  Truchon and the Human Resources manager eventually decided that PPG could not accommodate McGhee's restrictions.  Truchon Aff. ¶ 19.  Therefore, they recommended terminating him.  *Id*.

Around August 28, 2017, Truchon called McGhee to relay the termination decision.  After Truchon communicated this decision to McGhee, McGhee asked if he "could go back to [his] doctor and see if [they] could . . . revise the restrictions or . . . at least make it nonpermanent," but Truchon told McGhee they had already made their decision to terminate him.  McGhee Dep. 136:7-17.

## DISCUSSION

McGhee claims that PPG discriminated against him because of his race when it disproportionately assigned him to warehouse duties.[4]  He asserts these claims pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17.  He also claims that PPG discriminated against him because of his disability when it refused to accommodate his physical restrictions and terminated him. Moreover, he contends that PPG terminated him in retaliation for requesting accommodations.  He brings these disability related

---

[4] McGhee also belatedly seeks to complain of race-based retaliation, but he never asserted such a claim in his complaint.  And he cannot amend his complaint in response to a motion for summary judgment.  *See Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).

claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  The Court addresses McGhee's claims in turn.

## I.    Race-Based Discrimination

McGhee argues that PPG violated Title VII and § 1981 by discriminating against him based on his race when it disproportionately assigned him to warehouse duties.[5]  The causation standards for Title VII and § 1981 are different.  For his § 1981 claim, he must prove that his race was the "but-for" cause of his warehouse assignment.  *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, No. 18-1171, 2020 WL 1325816, at *5, *7 (U.S. Mar. 23, 2020).  For Title VII, he must only prove that race was a "motivating factor" in the assignment.  He can prove neither.

Because McGhee relies solely on circumstantial evidence to support his claims, the analysis begins with the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that [he] belongs to a protected class, (2) that [he] was subjected to an adverse employment action, (3) that [he] was qualified to perform the job

---

[5] McGhee originally brought Title VII and § 1981 claims based on his termination as well, but he does not argue or point to any evidence to suggest that he was terminated because of his race.  Therefore, McGhee abandoned this claim.

in question, and (4) that [his] employer treated 'similarly situated' employees outside [his] class more favorably." *Lewis v. City of Union City,* 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc). For the fourth prong, the plaintiff and his comparator must be "similarly situated in all material respects." *Id.* at 1218. "If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.*

Here, PPG does not dispute that McGhee's assignment to warehouse duties was an adverse employment action. And, there is nothing to suggest that McGhee was unqualified to perform his job as sales associate at the time that he was assigned to these duties.[6] However, the Court finds that McGhee has not established a prima facie case of discrimination because he failed to point to a similarly situated comparator outside his protected group who was treated more favorably than he was. In briefing, McGhee argues that all of his white co-workers are his comparators and contends that they were assigned to work in the warehouse less frequently than he was. But, at summary judgment, "[a] party asserting that

---

[6] The Court notes that the allegedly discriminatory assignments came before McGhee's doctor placed him on lifting restrictions.

a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1). When looking at the evidence cited in the record, none of it supports the inference that McGhee worked in the warehouse more than similarly situated white co-workers. The evidence shows that McGhee complained to PPG about "the duties . . . that were being assigned to [him]." McGhee Dep. 73:8-12; *see* Pl.'s Statement of Material Facts at 4, 10, ECF No. 21-1. And, it shows that he complained to Buhl "that he was being treated unfairly than the other employees" and that he complained "about the tasks that were being assigned to [him] versus other people," about "[n]obody helping [him] in the warehouse, [him] not being able to come up front, . . . people standing up front talking while there's still work to be done in the back," and generally about doing a disproportionate amount of work in the warehouse. McGhee Dep. 66:12-68:23, 205:3-23, 206:7-14; *see* Pl.'s Statement of Material Facts at 4; Def.'s Statement of Material Facts ¶ 37, ECF No. 15-2. Even though this evidence shows that McGhee worked in the warehouse more than his co-workers, the Court cannot determine based on this evidence that McGhee had any co-workers outside his protected class or that, even if he did, those co-workers were similarly situated to him in all material respects. Accordingly, he failed to meet his prima facie burden of pointing to similarly

situated comparators who were treated more favorably than him.[7] Without a prima facie case, no inference of discrimination arises, and McGhee cannot avoid summary judgment under *McDonnell Douglas.* But all hope is not lost, at least not yet.

The *McDonnell Douglas* analytical framework is not the only tool available for determining whether a claim of intentional discrimination survives summary judgment. Although the existence of a comparator may not be essential, McGhee still must present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ.,* 637 F.3d 729, 734 (7th Cir. 2011)). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman*, 637 F.3d at 733-34).

---

[7] The Court further finds that McGhee has not shown that his co-workers are similarly situated to him in all material respects because PPG assigns warehouse duties based on a seniority system and McGhee has not identified the relative seniority of any of his comparators.

For example, in *Smith*, the plaintiff was able to avoid summary judgment by pointing to evidence that the paperwork in an investigation into racist emails explicitly identified employees by race and the employer fired all employees that the paperwork identified as white, but did not fire any of the black employees under investigation. *Smith*, 644 F.3d at 1336-46.

Here, McGhee's circumstantial evidence of discrimination is significantly weaker than the evidence in *Smith*. In the past, PPG told McGhee that he was assigned to the warehouse because he was less senior than his co-workers and warehouse duties at the Columbus store are assigned based on a seniority system.[8] McGhee responds that this explanation was contradicted by Buhl in his deposition. Buhl testified that there was no "particular reason one employee might be put in the warehouse more often than . . . the [front of the store.]" Buhl Dep. 31:15-17. But, Buhl was not the decisionmaker here and was unfamiliar with the practices in the Columbus store. He was PPG's Store Group Manager for the Alabama Market; he managed twelve different PPG stores and was not in charge of assigning Columbus's sales associate duties. It was within the Columbus store manager's discretion to make those

---

[8] Because McGhee failed to establish a prima facie case of discrimination under *McDonnell Douglas*, the burden did not shift to PPG to establish a legitimate, non-discriminatory reason for McGhee's warehouse assignment. Accordingly, it is not detrimental to PPG that it failed to offer testimony or other evidence of a decisionmaker explaining the reason for McGhee's assignment.

assignments.  *Id*. at 29:14-23; 60:1-4.  Accordingly, Buhl, as a non-decisionmaker, would not necessarily know what criteria the Columbus store manager considered when assigning warehouse duties. Therefore, his testimony on the subject is not sufficient to show that the reason PPG previously gave for McGhee's warehouse assignment was false.

McGhee adds to his circumstantial mosaic that he was also singled out and treated unfairly by his supervisors regarding the discipline he received for being tardy.  But, "Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the working place.'"  *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)).  "Unless something links the actions to the employee's race, that a decisionmaker singles an employee out does not permit a jury to infer intentional discrimination based on race."  *Turner v. Fla. Prepaid Coll. Bd.*, 522 F. App'x 829, 833 (11th Cir. 2013) (per curiam).  "[The Eleventh Circuit] has never suggested that a plaintiff's generalized averment that [his] employer treated [him] differently than employees of a different race can, alone, create a 'convincing mosaic of circumstantial evidence' from which a jury could find intentional discrimination based on race."  *Id*. (quoting *Smith*, 644 F.3d at 1328).

Finally, McGhee completes his mosaic by painting alleged race-based descriptions of him. He claims fellow employees and supervisors called him "Black Magic" and said "you can always bet on black." McGhee Dep. 192:9-15. Although a racially biased comment can contribute to circumstantial evidence of discrimination, "it will usually not be sufficient absent some additional evidence supporting a finding" of discrimination. *Scott v. Suncoast Beverage Sales*, *Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002). As discussed above, McGhee's additional evidence is insufficient to show that his unfair treatment was racially motivated. McGhee's mosaic certainly does not portray the type of picture painted by the plaintiff in *Smith*. *See Cooler v. Layne Christensen Co.*, 710 F. App'x 842, 847 (11th Cir. 2017) (per curiam) (finding race-based statements insufficient to create a convincing mosaic of circumstantial evidence because this evidence was not as strong as the evidence of discrimination in *Smith*). McGhee's race-based discrimination claims do not survive under *Smith's* convincing mosaic standard or the traditional *McDonnell Douglas* analysis. Accordingly, PPG's motion for summary judgment as to his Title VII and § 1981 claims is granted.

## II. Disability-Based Discrimination

### A. ADA Discrimination Claims

McGhee alleges that PPG discriminated against him based on his disability when it failed to accommodate his physical

restrictions and terminated him.  The ADA requires employers to "make reasonable accommodations that allow a disabled individual to perform [his] job, unless that accommodation would cause an undue hardship." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998).  But, "[t]o prevail on [a] disability discrimination claim under the ADA, [McGhee] must show that: (1) [he] is disabled, (2) [he] was a 'qualified individual' . . . , and (3) [he] was discriminated against on account of [his] disability." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016).  The main question here is whether McGhee was a "qualified individual" under the ADA.[9]

The ADA defines "qualified individual" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of" his job.  42 U.S.C. § 12111(8).  "If the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007) (quoting *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005)).  For the reasons discussed below, the Court finds that McGhee was not a qualified individual because (1) lifting

---

[9] PPG also argues McGhee has not shown that he was disabled or discriminated against because of his disability.  The Court does not need to reach these arguments because McGhee has not established that he was a "qualified individual" under the ADA.

five-gallon buckets of paint, which normally weigh fifty-plus pounds, was an essential function of McGhee's job as a sales associate and (2) McGhee has not shown that he could perform this function with or without a reasonable accommodation. Accordingly, he is not covered under the ADA.

### 1. *Essential Function*

"[E]ssential functions" of a position are "the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). The Court may consider the following evidence to determine whether a particular function is essential: (1) "[t]he employer's judgment as to which functions are essential;" (2) "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job;" (3) "[t]he amount of time spent on the job performing the function;" (4) "[t]he consequences of not requiring the incumbent to perform the function;" (5) "[t]he terms of a collective bargaining agreement;" (6) "[t]he work experience of past incumbents in the job; and/or" (7) "[t]he current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3)(i)-(vii); *see also* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job."). "Determining whether a

particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001). And although an employer's view is accorded weight, it cannot be conclusive. *Holly*, 492 F.3d at 1258.

Here, PPG determined that lifting five-gallon buckets of paint was an essential function of McGhee's role as sales associate. Indeed, sixty to seventy percent of the overall lifting McGhee did as a sales associate was lifting five-gallon buckets of paint, and he admitted that lifting and carrying these five-gallon buckets was an essential function of his job. PPG's job description for the sales associate position provided that sales associates must "[e]xert[] up to 90 pounds of force occasionally . . . to move objects." PPG Job Description 1. And, PPG's Store Group Manager testified that "85, 90 percent of [the sales associate's] job requires lifting [a]nd at any given time, that lifting could've been 30 pounds or more." Buhl Dep. 47:12-18.

The undisputed evidence indicates that lifting the five-gallon buckets of paint was an essential function of McGhee's job. McGhee has not pointed to evidence genuinely contradicting this. He notes that PPG, in the past, permitted sales associates to forego lifting five-gallon buckets of paint *on a temporary basis*. But he does not point to admissible evidence suggesting that PPG

ever granted sales associates *permanent* relief from five-gallon-bucket-lifting duties, like McGhee's lifting-restriction required.[10]  McGhee did testify that someone told him female sales associates at PPG were not required to lift five-gallon buckets of paint, but PPG correctly notes that this testimony is hearsay. *See* Fed. R. Evid. 801(c).  McGhee did not have personal knowledge of any female sales associate who were granted this kind of relief.  McGhee's hearsay testimony cannot be used to establish a genuine factual dispute at summary judgment.  Fed. R. Civ. P. 56(c)(2) (noting that, at summary judgment, "[a] party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013, 1015 (5th Cir. 1967) (affirming a district court's refusal to give weight at summary judgment to hearsay in a deposition testimony).[11]  The undisputed

---

[10] McGhee's suggestion that his lifting restriction was not permanent and only applied when he was suffering a sickle cell crisis is contrary to the evidence in the record.  McGhee bases this argument entirely on the fact that his doctor never explicitly stated in the August letter that his lifting restriction was permanent.  But, all the other evidence in the record suggests that this was his doctor's intent.  For example, McGhee admitted in deposition that he understood his lifting restriction to be permanent.  And, when McGhee was later terminated, he asked Truchon if he could see about *revising* the restrictions to make them temporary.  He offers no evidence indicating he could have sometimes lifted five-gallon buckets of paint under his doctor's restrictions as they existed at the time.  Therefore, it is undisputed that his lifting restrictions were permanent.

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

evidence established that lifting five-gallon buckets of paint was an essential function of McGhee's job.

### 2. No Reasonable Accommodation

McGhee has not shown that he could have performed this essential function with or without a reasonable accommodation. The five-gallon buckets weigh around fifty pounds each, and McGhee's doctor imposed a permanent thirty-pound lifting restriction. Thus, McGhee clearly could not have lifted the fifty-pound buckets without accommodation. Moreover, his proposed accommodations were not reasonable. A plaintiff is "not entitled to the accommodation of [his] choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (quoting *Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 948 (N.D. Ga. 1995)). "An accommodation is 'reasonable' and necessary under the ADA only if it enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1259-60. "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Id.* at 1255-56; *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997) (per curiam) (ruling that an ADA plaintiff "as part of [his] burden of production, must identify an accommodation that would allow [him] to perform [his] job duties

and . . . as part of the burden of proving [his] case, must establish that such an accommodation is reasonable").

First, McGhee asked PPG to accommodate his lifting restriction by changing his job to eliminate the requirement that he lift five-gallon buckets of paint. But, the Eleventh Circuit has made it clear that the ADA does not require an employer "to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists." *Lucas*, 257 F.3d at 1260; *accord Holly*, 492 F.3d at 1262 n.16 (noting that an employer is not required to eliminate an essential function of the plaintiff's job). As previously discussed, lifting five-gallon buckets was an essential function of McGhee's job. Eliminating this function was not a reasonable accommodation.

Next, McGhee suggests he could have lifted the five-gallon buckets with the aid of tools such as dollies or transports. But, McGhee admitted that he still would have had to lift the five-gallon buckets to place them onto and take them off of these tools. He also suggests that he could have lifted the buckets with the help of co-workers. But, nothing in McGhee's August letter or elsewhere in the record suggests he could lift objects over thirty pounds as long as he had help from other people. Finally, he suggests he could have lifted the five-gallon buckets when he was not suffering a crisis. But, again, he offers no evidence supporting this contention that his lifting restriction only

applied when he was suffering a crisis.  Accordingly, McGhee has not met his burden of showing that he could have lifted the five-gallon buckets with any of these accommodations.  Therefore, they are not reasonable.  Because McGhee has not shown that he could perform the essential functions of his sales associate position with or without reasonable accommodation, he has not established that he was a "qualified individual" under the ADA.

### 3.  *McGhee's Convincing Mosaic Argument*

McGhee argues that, even if he is not a qualified individual, his ADA claims should still survive summary judgment because he points to "a convincing mosaic of circumstantial evidence that would allow a jury to infer" PPG engaged in intentional disability discrimination.  *Smith*, 644 F.3d at 1328.  But, McGhee makes no attempt to explain how this "convincing mosaic" framework (a method of proving intentional discrimination) would somehow allow an otherwise unqualified individual to bring an ADA claim.  The text of the ADA clearly states that it only applies to intentional discrimination against "qualified individual[s]."  *See* 42 U.S.C. § 12112(a) (emphasis added) ("No covered entity shall discriminate against *a qualified individual* on the basis of disability . . . .").  Because McGhee has not shown that he is a qualified individual (e.g., that he is able to perform the essential functions of his position with or without accommodation), the ADA does not apply to him regardless of whether

he can otherwise show intentional discrimination via a "convincing mosaic" of circumstantial evidence.

Moreover, the evidence that McGhee relies on for his "convincing mosaic" theory relates to the process PPG engaged in to determine what accommodations it could provide McGhee.[12] The Eleventh Circuit has explained that "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Willis*, 108 F.3d at 285; *see also Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir. 1996) (per curiam) (expressing confidence that the ADA "does not mandate a pretermination investigation"). Here, McGhee did not demonstrate a reasonable accommodation. McGhee's argument that the Court nevertheless must evaluate PPG's pretermination investigation is contrary to this binding precedent. For these reasons, the Court grants PPG summary judgment on McGhee's ADA discrimination claims.

B.   ADA Retaliation Claim

McGhee also asserts that PPG retaliated against him for requesting accommodations by terminating him. The ADA prohibits retaliating against an employee for requesting an accommodation. 42 U.S.C. § 12203(a). To establish a prima facie claim of

---

[12] For example, he contends a jury could find intentional discrimination based in part on the fact that PPG did not clarify whether his lifting restrictions were permanent and based on the fact that Lehman denied McGhee's accommodation request in the July letter without first investigating possible accommodations.

retaliation under the ADA, McGhee "must show that: (1) [he] engaged in a statutorily protected expression, (2) [he] suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White*, 818 F.3d at 1258. "The first element may be met by a request for a reasonable accommodation." *Id.* The Court assumes for purposes of this order that McGhee can establish a prima facie case of retaliation. Once he has done so, the burden of production shifts to PPG to articulate "legitimate non-discriminatory reasons" for its actions. *Stewart*, 117 F.3d at 1287. McGhee must then demonstrate that PPG's proffered, non-discriminatory reasons are pretext for retaliation. *Id.*

Here, PPG states that it terminated McGhee because his permanent thirty-pound lifting restriction prevented him from performing an essential function of his job, lifting five-gallon buckets of paint. McGhee does not offer any evidence that this reason was pretext for discrimination. Therefore, his ADA retaliation claim fails. *See Roddy v. City of Villa Rica*, 536 F. App'x 995, 1002 (11th Cir. 2013) (per curiam) (dismissing ADA retaliation claim when plaintiff's employer terminated him because of his physical inability to perform the tasks of his position after he requested an unreasonable accommodation); *Monroe v. Fla. Dep't of Corrs.*, 793 F. App'x 924, 928 (11th Cir. 2019) (per curiam) (dismissing retaliation claim in part because plaintiff "did not present any evidence showing that the [employer's]

proffered reason for terminating him—that he was unable to perform his assigned duties—was pretextual" after finding plaintiff's request for accommodation was unreasonable).

CONCLUSION

For the reasons discussed above, the Court grants summary judgment in favor of PPG on all of McGhee's claims.

IT IS SO ORDERED, this 3rd day of April, 2020.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA